UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Peter J. D'Auria, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-Mail:  Peter.J.D'Auria@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Pilgrim Medical Center, Inc., *et al.*, | : | Case No. 16-15414(VFP) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Hearing Date: May 2, 2017 at 10:00 a.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO
DEBTOR IN POSSESSION'S MOTION TO APPROVE SETTLEMENT
PURSUANT TO FEDERAL RULE BANKRPUTCY PROCEDURE 9019(a)**

The Acting United States Trustee (the "UST"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), objects to the Debtor in Possession's Motion to Approve Settlement Pursuant to Federal Rule Bankruptcy Procedure 9019(a) (the "Motion"), and respectfully represents as follows:

**PRELIMINARY STATEMENT[1]**

1.     The proposed Settlement violates the Bankruptcy Code in many respects.  The proposed Settlement calls for the parties to appoint and designate a fiduciary "Trustee," something only the United States Trustee can do pursuant to the Bankruptcy Code.  The proposed Settlement gives such "Trustee" powers to sell property, including property of the

---

[1] Capitalized terms shall have the meaning as defined herein.

estate, something that only the actual "trustee" in the case can do pursuant to the Bankruptcy Code.

2. The Settlement seeks to enhance the position of certain creditors, the Plaintiffs, by transforming their judgment liens into mortgage liens, coupled with an intention to at some point seek to dismiss the cases, and thereby dismiss other creditors' rights out from under the Bankruptcy Code. The proposed Settlement seeks to "resolve the Debtors' pending Chapter 11 case" without proper and lawful treatment of all creditor constituents, and therefore stands as an impermissible *sub rosa* plan.

3. While certain creditors (the Plaintiffs) enhance their lien position, it is not clear how the proposed Settlement, taken as a whole, serves the paramount interests of all creditors of the Debtors' bankruptcy estates.

4. It is respectfully asserted that the Motion must be denied.

## BACKGROUND

5. On March 22, 2016, Pilgrim Medical Center, Inc. (the "Corporate Debtor") filed a voluntary petition for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code" or the "Code"). To date, the Corporate Debtor has remained in possession of its property and management of its affairs.

6. On June 8, 2016, Nicholas V. Campanella (the "Individual Debtor," together with the Corporate Debtor the "Debtors") filed a voluntary petition for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). To date, the Individual Debtor has remained in possession of its property and management of its affairs.

7. An Unsecured Creditors' Committee previously appointed in these cases was disbanded by the UST on November 16, 2016.

8. On April 13, 2017, the Debtors filed the Motion (docket entry 160). The Motion seeks this Court's approval of the Stipulation of Settlement (docket entry 161) (the "Settlement").

9. The Motion avers that the statutory predicate for the relief sought therein is section 105(a) of the Bankruptcy Code, as well as Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019"). See, Motion at ¶ 2.

## ARGUMENT

10. It is respectfully asserted that, as a matter of law, approval of the Settlement must be denied.

*Review of the Settlement:*

11. The Settlement asserts that the Plaintiffs (as defined therein) obtained a judgment against the Debtors, the Debtors were unable to obtain a supersedeas bond, and the Debtors each filed a voluntary bankruptcy petition "in order to stay exection upon the Judgment." Settlement, page 2. The Settlement further details that the Debtors, the Plaintiffs, Marie (as defined therein, the non-filing spouse of Individual Debtor), and MCN (as defined therein, a non-debtor entity) engaged in extensive discussions "in an effort to resolve the Debtors' pending Chapter 11 case." Settlement, pages 2-3.

12. The Settlement calls for some manner of an "Interim Standstill," although that term is not defined in time. Settlement, page 3. The Settlement further provides for "a further standstill," that term not defined. Id. The Settlement thereafter calls for a "second standstill," that term also not defined. Id. Together with these standstill concepts, reading the Settlement as a whole provides that the pendency of the Debtors' chapter 11 bankruptcy cases will continue (after approval of the Settlement) for some undefined period of time.

13.  The Settlement proposes to appoint a "Trustee" in the Debtors' pending chapter 11 cases.  <u>Settlement</u>, ¶ 9.  This "Trustee" is stated to be "the Plaintiffs' designated fiduciary."  <u>Id</u>.  The Settlement states that "John Murano shall serve as the Trustee."  <u>Settlement</u>, ¶ 27.  The Settlement states that "[t]he designated Trustee shall serve in a fiduciary capacity to protect the rights of the Committee and the Plaintiffs."  <u>Id</u>.  The capitalized term "Committee" is not defined in either the Motion or the Settlement.

14.  On multiple occasions, the Settlement empowers the proposed "Trustee" to sell assets in this Court in this chapter 11 proceeding, as detailed below;

   a.  The Settlement states that "the Trustee, will have the right to reopen the Debtors' Bankruptcy Cases, obtain the appointment of an auctioneer, and promptly proceed with an auction sale of the Haskell Property."  <u>Settlement</u> ¶ 17.  The Settlement defines the "Haskell Property" as 909 Ringwood Avenue, Haskell New Jersey, that being a property not listed on Schedule A/B[2] of either the Debtors.

   b.  The Settlement states that "the Trustee shall be permitted to (i) reopen the bankruptcy case(s) and seek to schedule a public auction sale of the Mortgaged Properties."  <u>Settlement</u>, ¶ 18.  The Settlement defines the term "Mortgaged Properties" to include; (i) the "Sea Girt Home," which is defined as 101 Beacon Boulevard, Sea Girt, New Jersey, an asset listed on the Individual Debtor's Schedule A/B, (ii) "387 Bloomfield," which is defined as 387 Bloomfield Avenue, Montclair, New Jersey, that being a property not listed on Schedule A/B of either the Debtors, and (iii) the Haskell property.

---

[2] The Corporate Debtor's Schedule A/B is filed at docket entry 23 on the Corporate Debtor's docket (case number 16-15414(VFP)).  The Individual Debtor's Amended Schedule A/B is filed at docket entry 17 on the Individual Debtor's docket (case number 16-21185(VFP)).

4

      c. The Settlement states that "the Trustee will have the right to file an application to reopen the Debtors' Chapter 11 proceeding, retain an auctioneer, and schedule a public auction sale of the Mortgaged Properties." <u>Settlement</u>, ¶ 24.

15. At the heart of the settlement is the replacement of the Plaintiff's judgement lien with a mortgage lien. <u>See</u>, <u>Motion</u> at ¶20.

16. The Settlement expressly communicates an intention to pursue a dismissal of the Debtors' cases. The Settlement provides that, after the occurrence of a number of events, including the payment of administrative claims in the Debtors' Chapter 11 cases, "the Plaintiffs consent to the entry of an order dismissing these Chapter 11 Bankruptcy Cases pursuant to and subject to the terms of the Stipulation." <u>Settlement</u> ¶ 23.

***Settlement Impermissibly Seeks to Designate a Trustee to Sell Property:***

17. As detailed above, the proposed Settlement provides that the Plaintiffs will designate a "Trustee," during the pre-confirmation pendency of the Debtors' Chapter 11 cases, and that such "Trustee" will have the power to sell both estate assets and non-debtor assets here in this Court, in these chapter 11 proceedings. This proposal is flatly impermissible.

18. If the Debtors, their management, or their officer(s) are unable or unwilling to comply with their fiduciary duties, the only remedy available under the Bankruptcy Code that allows the Debtors to remain in Chapter 11 is the appointment of a trustee. However, the parties are not able to fill that void; the Plaintiffs are not able to "designate" such "Trustee." The express provisions of the Bankruptcy Code provide for exactly how a chapter 11 trustee gets appointed, which simply stated is a Bankruptcy Court order directing the appointment of such trustee, and then the UST making such appointment.

5

19. Congress provided no other way to replace debtor's management or control of an estate with an independent fiduciary other than the appointment of a trustee pursuant to 1104(a) of the Code. Equitable principles cannot be used to circumvent clear Congressional intent. See. e.g., United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 33 F.3d 294, 300 (3d Cir. 1994); United States Trustee v. Price Waterhouse. 19 F.3d 138, 142 (3d Cir. 1994). In addition, section 105 of the Code (the statutory predicate for the relief sought in the Motion) can only be used to carry out provision of the Code, not to create new provisions into the statute that Congress neither enacted nor intended. Using section 105 of the Code to install a "Trustee" in charge of the administration of estate assets would be a violation of the letter of the Code.

20. Subsection 1104(d) of the Code clearly states that it is the United States Trustee, subject to the court's approval, who appoints a *trustee*. As to selling assets in this Bankruptcy Court, subsection 363(b)(1) clearly states that it is the *trustee*, after notice and a hearing, who may sell property of the estate. The proposal in the Settlement that the Plaintiffs designate John Murano to serve in a fiduciary capacity in these cases as "Trustee," and be empowered to sell estate assets in this Bankruptcy Court, is in direct contravention of express provisions of the Bankruptcy Code.[3]

---

[3] The Debtors cite Section 105(a) of the Bankruptcy Code to support their requested relief. To the extent the Debtors seek relief that is directly contrary to Code provisions, however, Section 105(a) provides no support, as "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" Law v. Siegel, 134 S. Ct. 1188, 1194 (2014) (quoting 2 Collier on Bankruptcy ¶105.12[2], at 105-06 (16th ed. 2013)). Similarly, Section 105(a) cannot be used to graft new provisions onto the statute that Congress neither enacted nor intended. See Southern Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3d Cir. 1985) ("[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law."). In addition, equitable principles cannot be used to circumvent clear Congressional intent. See, e.g., United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 33 F.3d 294, 300 (3d Cir. 1994); United States Trustee v. Price Waterhouse, 19 F.3d 138, 142 (3d Cir. 1994). Rather, "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." Law v. Siegel, 134 S, Ct. at 1194 (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)).

*Proposed Settlement Constitutes an Impermissible Sub Rosa Plan:*

21. As detailed above, the Settlement expressly contemplates, at some point, a dismissal of the Debtors' cases. The Settlement states that, after the occurrence of certain events, "the Plaintiffs consent to the entry of an order dismissing these Chapter 11 Bankruptcy Cases pursuant and subject to the terms of the Stipulation." Settlement, ¶ 23. The Settlement says that the cases will be dismissed ***pursuant*** to the terms of the Stipulation.

22. Exactly how the parties can call for the dismissal of the cases pursuant to the terms of the Stipulation is not clear, as neither the Stipulation nor the Motion seek dismissal of the cases. We also note that only the Bankruptcy Court can dismiss a case.

23. More concerning is that unsecured creditors are glossed over in the Motion. The Motion speaks to the claims register, and the Certification by the Individual Debtor annexed to the Motion sweepingly states that he "anticipates" he and the Corporate Debtor will be able to pay their Debts. However, there is no discussion of the unsecured claims scheduled in either case.

24. By way of the Settlement, the parties thereto seek to "wrap-up" and dismiss these cases, without proper and lawful regard for all creditor constituents. The Settlement states that it is an attempt to "resolve the Debtors' pending Chapter 11 case." Settlement, pages 2-3. The Settlement, taken in its entirety, cannot be approved as it is an impermissible *sub rosa* plan.

25. A transaction is an impermissible *sub rosa* plan if it disposes of all or substantially all of a debtor's assets without following the Bankruptcy Code's procedural protections in connection with the development and approval of a plan of reorganization. The

7

procedural protections provided in the Bankruptcy Code include, among other things, the right to receive a detailed disclosure statement from a debtor, and the right to vote on the proposed plan.

26.    Because of the importance of these protections to ensure that creditors are treated fairly, courts have rejected proposed post-petition agreements between debtors and select creditors that have the effect of dictating material terms of a plan of reorganization without complying with the Bankruptcy Code's procedural requirements for plan confirmation. See Czyzewski, et al., v. Jevic Holding Corp., et al., 137 S.Ct. 973, 983-87; see also In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983) ("The debtor and the bankruptcy court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets"); In re Decora Industries, Case No. 00-4459-JJF, 2002 WL 32332749 at *8 (D. Del. May 20, 2002) ("the focus of 'sub rosa' plan analysis is oriented toward those situations in which a debtor proposes to sell 'all' or 'substantially all' of its assets without the benefit of a confirmed plan or a court-approved disclosure statement."); In re Swallen's, Inc., 269 B.R. 634, 638 (BAP 6th Cir. 2001) ("At least when a party in interest objects, a bankruptcy court cannot issue orders that bypass the requirements of Chapter 11, such as disclosure statements, voting, and a confirmed plan, and proceed to a direct reorganization on the terms the court thinks best, no matter how expedient that might be").

27.    The parties to the Settlement may (or may not) be able to accomplish much (if not all) of what they are trying to accomplish in the Settlement through a chapter 11 plan that proposes to creditors, with adequate information provided, and the right to a vote, an exit from bankruptcy that puts in place some form of "plan administrator". However, the parties to the Settlement seek to re-jigger their rights between themselves, and then, when convenient for

them, seek a dismissal of these cases and therewith dismiss all other creditors' rights out from under the protection of this proceeding. Such an approach, under the cloak of a "mere" motion to approve a settlement, effects an impermissible *sub rosa* plan, and must not be approved.

***Settlement Falls Short of Being Fair and Equitable as to the Estate:***

28.   The Debtors seek approval of the Settlement pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. Proc 9019, asserting that the proposed Settlement is "fair" (Motion at ¶ 15), and that the Settlement "is in the best interest of the estate and creditors." Motion at ¶ 26. "Under the "fair and equitable" standard, we look to the fairness of the settlement to other persons, *i.e.* the parties who did not settle." In re Nutraquest, Inc., 434 F.3d 639,645 (3rd Cir. 2006). The Debtors, as a debtors-in-possession, "[have] a fiduciary relationship with *all* creditors of the estate." In re Martin, 91 F3d 389,394 (3rd Cir. 1996). It is the responsibility of the bankruptcy court to make determinations as to the best interests of the estate. "In order to make such a determination, the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of actions will be in the best interest of the estate." Id. Moreover, the proposed Settlement is entangled with terms that involve insiders; such entanglements between the Debtors and insiders in the express terms of the proposed Settlement necessarily subjects approval of such Settlement to closer scrutiny by this Court. See, In re Drexel Burnham Lambert Group, Inc. 134 B.R. 493, 498 (Bankr. SDNY 1991).

29.   The often cited *Martin* case in connection with the proposal and approval of settlements in bankruptcy sets out four factors for the court to consider, those being "(1) the probability of success in litigation; (2) the likely difficulty in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the

paramount interest of the creditors." Nutraquest, 434 F.3d at 644 (quoting Martin, 91 F.3d at 393.) In the instant matter, "the paramount interest of the creditors" rings loudly, as there is an unsecured creditor body in these cases.

30. The parties to the Settlement, which include non-debtor insiders, may feel the Settlement is fair between them. But the question presented in seeking this Court's approval of the Settlement is whether enhancing the Plaintiff's judgment liens into mortgage liens, coupled with the subsequent intention to dismiss other creditors' rights out from under the Bankruptcy Code, serves the paramount interests of all creditors in these cases. We respectfully assert that the proposed Settlement falls short of being fair and equitable for the Debtors' bankruptcy estates.

## CONCLUSION

For the reasons set forth above, the Acting United States Trustee requests that this Court deny the Motion, and grant such further relief as this Court deems just, fair and equitable.

                Respectfully submitted,

                ANDREW R. VARA
                ACTING UNITED STATES TRUSTEE
                REGION 3

                By:    */s/ Peter J. D'Auria*
                          Peter J. D'Auria
                          Trial Attorney

Dated: April 28, 2017