FILED
JEANNE A. NAUGHTON, CLERK
**7/26/2017**
United States Bankruptcy Court
Newark, New Jersey
By: */s/ Margaret Cohen, Judicial Assistant*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In re:<br><br>PILGRIM MEDICAL CENTER, INC., AND NICHOLAS V. CAMPANELLA,<br><br>　　　　　　　　　　　　　　Debtors. | Case No.:　16-15414　VFP<br><br>(Jointly Administered)<br><br><br>Chapter　11 |

## MEMORANDUM OPINION

**APPEARANCES**

SCURA, WIGFIELD, HEYER,
　STEVENS & CAMMAROTA, LLP
Counsel for Debtors
1599 Hamburg Turnpike
Wayne, NJ  07470
David L. Stevens, Esq.

LAW OFFICES OF JEROME M. DOUGLAS, LLC
Counsel for Nicholas V. Campanella
1600 Route 208 North
P.O. Box 670
Hawthorne, NJ  07507
Jerome M. Douglas, Esq.

CULLEN and DYKMAN LLP
Counsel for Official Committee of Unsecured Creditors
422 Hackensack Avenue
Hackensack, NJ  07601
David Edelberg, Esq.

**VINCENT F. PAPALIA, Bankruptcy Judge**

 **A. Background**

 This matter is before the Court on the application of Cullen and Dykman ("C&D") for the award of fees and expenses it incurred in connection with its representation of the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 cases of Pilgrim Medical Center, Inc. ("Pilgrim") and Nicholas V. Campanella ("Campanella"), Pilgrim's principal. The Pilgrim and Campanella (collectively, the "Debtors") cases are jointly administered pursuant to an Order of this Court entered on November 7, 2016 on motion of the Committee, rather than the Debtors, as is typically the case.

 The Committee in both cases consisted of Jacqueline Jalil, Tania Mena and Luisa Rojas (collectively, "Plaintiffs"). Plaintiffs are former employees of Pilgrim. On October 9, 2013, Plaintiffs obtained a judgment in the amount of $1,107,346.83 against the Debtors in an employment discrimination case filed in the Superior Court of New Jersey (the "Judgment"). The Judgment was appealed by Debtors, each of whom then filed for the protection of this Court. The Judgment was affirmed by the Appellate Division of the Superior Court, and Debtors are now asking the New Jersey Supreme Court to consider a further appeal.

 C&D was authorized to represent the Committee in the Campanella case by Order of this Court entered on October 12, 2016, *nunc pro tunc* to the Committee's formation on September 28, 2016. C&D also filed an application to be retained as counsel for the Committee in the Pilgrim case, to which Pilgrim objected. As a result, a hearing on the Pilgrim retention application was scheduled to address Pilgrim's objection. However, while that application was pending, the United States Trustee disbanded the Committee in both cases on November 16, 2016, as the result of the Debtors' reclassification of the Committee members as secured creditors. Shortly thereafter, C&D

2

filed an application to reinstate the Committee or, in the alternative, to appoint a Committee of Employment Discrimination Claimants (the "Reinstatement Motion").

The Reinstatement Motion was repeatedly adjourned while the parties discussed settlement among themselves and with the assistance of a mediator. A settlement was ultimately reached and is the subject of a proposed Plan of Reorganization recently filed by the Debtors. As a result of those proceedings and discussions, the Reinstatement Motion was never heard and C&D was never officially retained as counsel for the Committee in the Pilgrim case. As will be discussed in more detail below, the lack of official retention in the Pilgrim case is a primary -- though certainly not the exclusive -- basis of the Debtors' objection to C&D's fees and expenses, which are apparently not part of the settlement.

In response, the Committee argues that the Debtors' cases were treated as one for all practical and legal purposes and that it made substantial contributions to the Debtors' cases in various ways, including the following:

- The Committee obtained an order directing the joint administration of these cases.

- The Committee successfully sought to reverse two prepetition alleged fraudulent conveyances of valuable real property in Montclair owned by Campanella. Those two properties have an estimated value of $2.2 million.

- The Committee was a principal cause of the agreement of Dr. Campanella's wife to subordinate her interest in various jointly owned real properties to unsecured creditors. Those two properties have an approximate value of $2.8 million, subject to mortgages of approximately $950,000.

- The Committee sought discovery from the Debtors and other involved parties, including Dr. Campanella's family members, to address various transfers and other matters relating to these estates.

- The Committee agreed to mediate all issues between and among the parties, which ultimately resulted in the proposed settlement.

The Debtors object to the majority of C&D's fees and expenses on various grounds,

3

including the following:

- Any fees attributable to the Pilgrim case, in which C&D was never officially retained;

- Any time spent preparing subpoenas, deemed "harassing" to family members;

- All time spent by an associate, Alissa Piccione, particularly $4,550 spent on legal research (of which $2,626 was billed on the day that the UCC was disbanded);

- Any time which David Edelberg spent conferring with John Murano, Esq., the Judgment Creditors' state court attorney;

- Any work done resolving C&D's conflicts issues;

- Any time spent drafting responses to objections to retention;

- Any time spent researching fraudulent transfers (because Debtors "admitted" them);

- The Committee had no diversity, served only its own agenda and did not provide adequate representation.

In total, the objections relate to $37,029 (or 62 %) of the $53,429 in fees charged by C&D and $253.33 of the $489.53 expenses sought by C&D. For the following reasons, the Court will overrule most of the Debtors' objections and award C&D $50,504 in fees and $253.33 in expenses, or a total of $50,757.33.

### B.  General Standards for Allowance of Compensation and Expenses

The standards for allowance of a retained professional's fees and expenses are set forth in Section 330 of the Bankruptcy Code and are not in dispute. These standards are as follows:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . . the court may award to a . . . professional person employed under section 327 or 1103 --
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

4

    (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4) (A) Except as provided in subparagraph (B), the court shall not allow compensation for—
        (i) unnecessary duplication of services; or
        (ii) services that were not—
            (I) reasonably likely to benefit the debtor's estate; or
            (II) necessary to the administration of the case.

11 U.S.C. § 330. *See generally*, 3 COLLIER ON BANKRUPTCY ¶ 330.02[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) regarding employment and compensation of professional persons.

    Applying these standards, the Court will address each of the objections raised by the Debtors. Additionally, because the issue of whether C&D's retention should be approved was never addressed by this Court due to the Committee's disbandment by the United States Trustee before the retention application could be heard, the Court is first required to determine whether

5

C&D's retention would have been approved in the Pilgrim case and whether that retention should be approved *nunc pro tunc* to the Committee's formation.

### C. The Committee's Retention in Pilgrim and the Related Fees

#### 1. The Background of C&D's Proposed Retention in the Pilgrim Case

Debtors argue that none of C&D's fees and expenses relating to Pilgrim should be allowed because C&D was never officially retained in the Pilgrim case. C&D did, however, file an application to be retained as counsel to the Committee on October 13, 2016. Like the Campanella application, the Pilgrim application sought *nunc pro tunc* authorization of C&D's retention to the Committee's formation on September 28, 2016. The Pilgrim retention application was objected to by Debtors and was originally scheduled to be heard on November 15, 2016 and then adjourned to November 29, 2016. In the interim, on November 16, 2016, the United States Trustee determined to disband the Committee. Thus, since there was no Committee at the time, the application to retain C&D was determined to be moot and was not ruled upon by the Court.

On November 18, 2016, two days after the Committee was disbanded, C&D filed an application to reinstate the Committee or, alternatively, appoint an Official Committee of Employment Discrimination Claimants [Dkt. No. 113]. That motion was also never heard or decided because the parties had, in the interim, entered into mediation and settlement discussions, which ultimately resulted in an agreement to resolve the issues between the parties. Additionally, as was previously noted, on November 2, 2017, while C&D's retention application in the Pilgrim case was pending, an order was entered providing for the joint administration of the Pilgrim and Campanella cases as the result of a motion by the Committee [Dkt. No. 98].

Against this factual backdrop, the Debtors seek to deny C&D's fees and expenses for all matters relating to Pilgrim. While it is generally true that Court approval of a professional's retention is required for that professional to be compensated, this Court finds that under the

6

extraordinary circumstances of this case, C&D's retention as the Committee's professionals will be approved *nunc pro tunc* to September 28, 2016, when the Committee was formed. The Court makes this determination as a matter of law and of equity, as it would be inherently unfair to disallow any fees or expenses to C&D for services relating to Pilgrim in these circumstances.

### 2. *Nunc Pro Tunc* Retention

In the Third Circuit, *nunc pro tunc* retention of a professional may be granted, but only in extraordinary circumstances, and in the exercise of the Bankruptcy Court's sound discretion. *In re Arkansas Co., Inc.*, 798 F.2d 645, 650 (3d Cir. 1986) (also noted that retroactive approval is not permitted when it results from inattention or oversight by counsel). In determining whether extraordinary circumstances exist, the bankruptcy court should consider the following:

> (1) whether the applicant or some other person bore responsibility for applying for approval;
>
> (2) whether the applicant was under time pressure to begin service without approval;
>
> (3) the amount of delay after the applicant learned that initial approval had not been granted**;**
>
> (4) the extent to which compensation to the applicant will prejudice innocent third parties; and
>
> (5) other relevant factors.

*In re Arkansas Co., Inc.*, 798 F. 2d at 650. These factors are part of a two-part test established by the Court, which requires that:

> [F]irst, the bankruptcy court must find, after a hearing, that the applicant satisfies the disinterestedness requirements of section 327(a) and would therefore have been appointed initially; and second, the court must, in the exercise of its discretion, determine that the particular circumstances presented are so extraordinary as to warrant retroactive approval.

*See F/S Airlease II, Inc*. v. *Simon,* 844 F.2d 99, 105 (3d Cir. 1988) (*citing In Re Arkansas* at 650).

The Court will now examine these factors as relates to this case.

### (a) Whether C&D is Disinterested and Would Have Been Appointed Initially

In this case, C&D's retention was already approved in the directly related and jointly administered Campanella case. C&D's disclosures in the Campanella case were identical, but there was no objection to C&D's retention in that case. Pilgrim, however, did object to C&D's retention on the ground that it is not disinterested on the basis of asserted conflicts of interest with other C&D clients. Interestingly, those asserted conflicts are based on mortgages held by C&D clients on properties owned by Dr. Campanella, rather than Pilgrim.

The asserted conflicts relate to the following mortgages and properties:

| Property | Creditor | Mortgage Amount | Value (per schedules) |
|---|---|---|---|
| 384 Sunset Blvd. Wyckoff, NJ 07481 | Bank of America | $239,491.00 | $899,000.00 |
| 3205 Fox Chase Circle North, Apt. 202 Palm Harbor, FL | Bank of America | 68,093.00 | 71,587.00 |
| 101 Beacon Blvd. Sea Girt, NJ 08750 | M&T Bank | 664,495.99 | 1,800,000.00 |

These properties are owned by Dr. Campanella and his wife individually. Another creditor that C&D represents in unrelated matters is J.P. Morgan Chase, which holds an unsecured claim of approximately $13,000 against Pilgrim only. The issue as to J.P. Morgan Chase is easily resolved by reference to 11 U.S.C. § 1103(b) which provides in pertinent part that "representation of one or more creditors of the same class as represented by the Committee shall not per se constitute the representation of an adverse interest." As is noted by the Committee, as an unsecured creditor, J.P. Morgan Chase's interests are aligned with the Committee of Unsecured Creditors. In fact, as an unsecured creditor, J.P. Morgan Chase has already received a demonstrable benefit from the Committee's representation, which resulted in the return of improperly transferred properties and

8

the "correction" of various omissions or incorrect disclosures by Debtors and a pending settlement that will result in the payment in full of all unsecured creditors, including Chase and the Committee members.

The conflict issues raised as to Bank of America and M&T Bank are somewhat more difficult because, as is noted by the Debtors, the cited provision of section 1103(b) does not apply when the representation relates to a different class of creditors, such as those holding security for their claims. *See In re Calabrese*, 173 B.R. 61, 63 (Bankr. D. Conn. 1994). Further, as is also noted by the Debtor, the prior sentence of section 1103(b) states that: "[a]n attorney or accountant employee to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest *in connection with the case*." 11 U.S.C. § 1103(b) (emphasis supplied).

Debtors argue that this provision of section 1103(b) prohibits the Committee's retention of C&D because C&D represents other secured creditors of the Debtors in other matters (unrelated to these cases). However, this provision does not sweep so broadly. As is noted by COLLIER and various cases, the prohibition contained in the first sentence of section 1103(b) is limited "to the representation of other entities *in connection with the case*." 7 COLLIER ON BANKRUPTCY ¶ 1104.04[2] at 1103-17 (emphasis supplied). Stated somewhat differently, section 1103(b) "does not prohibit simultaneous representation of both the committee and the adverse interest, so long as the professional represents the holder of the adverse interest in matters unrelated to the case." *Id.*, citing *Daido Steel Co., Ltd. v. Official Comm. of Unsec. Creditors*, 178 B.R. 128 (N.D. Ohio 1995).

In the *Daido* case, the District Court affirmed the Bankruptcy Court's decision that neither the cited language of section 1103(b) or the court's holding in the *Calabrese* case cited above prohibited a firm from simultaneously representing a creditors committee and another entity with an adverse interest to the estate, so long as the representation is with respect to matters unrelated to

9

the subject bankruptcy case. In *Daido*, the attorneys for the committee also represented an entity that was seeking to acquire the Debtor, but in matters unrelated to the bankruptcy case and not the potential acquisition. While noting some potential ambiguity in the language of the first sentence of section 1103(b), the *Daido* court adopted COLLIER's interpretation, relying on the plain language of section 1103(b) and the legislative history of that section which states as follows:

> [T]he bill requires that an attorney for a creditors' committee cease representation of creditors *in connection with the case. It does not require the attorney to cease representation of the creditors in matters unrelated to the case*.

*Id*. at 131 (emphasis supplied in part; in original in part) *citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. 104-5, 1978 U.S. Code Cong. & Admin. News 5787 (1977).

The *Daido* court went on to note that the later amendments to section 1103(b) to substitute "an attorney or accountant" for "a person" and "entity with an adverse interest" for "entity" had the effect of refining rather than broadening the meaning of section 1103(b). *Daido*, 178 B.R. at 131-32. Relying on this legislative history and its interpretation of the cited language, the *Daido* court held that section 1103(b) imposes no bar to a law firm's representation of a creditors committee and the simultaneous representation of a party with matters unrelated to the bankruptcy case. *Id*. at 132. *See also In re Caldor*, 193 B.R. 165 (Bankr. S.D.N.Y. 1996) (law firm may be employed by creditors committee even though it also served as counsel to the committee in a competitor's case). In so holding, the *Daido* court distinguished and disagreed with *In re Calabrese*, 173 B.R. 61 (Bankr. D. Conn. 1994) (which held that § 1103 bars simultaneous representation of secured and unsecured creditors even when matter is unrelated based on the appearance of a conflict). *See also In re Caldor*, 193 B.R. 165 (Bankr. S.D.N.Y. 1996) (law firm may be employed by creditors committee even though it also served as counsel to the committee in a competitor's case).

10

This Court agrees with the reasoning of the *Daido* court and believes that the *Calabrese* decision reads section 1103(b) too narrowly. Further, the *Calabrese* case is inconsistent with the later-decided opinion of the Third Circuit in *Marvel Entertainment*, which held, *inter alia,* that disqualification is *not* required on the basis of an appearance of a conflict, and is left to the court's discretion when there is a potential conflict. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476-77 (3d Cir. 1998) (in interpreting "adverse interest" under 327(a) (or 1103(b)), the Court must disqualify a professional who has an actual conflict of interest, but has discretion to qualify or disqualify a professional who has only a potential conflict of interest, and may not disqualify counsel based solely on the appearance of a conflict) and *In re BH & P Inc.,* 949 F. 2d 1300, 1316 (3d Cir. 1991).

In this case, it is undisputed that C&D's representation of Bank of America, M&T Bank and J.P. Morgan Chase (collectively, the "Banks") is in connection with matters unrelated to the Debtors' cases. (See Committee Response, [Dkt. No. 1100], ¶¶ 6-9; Committee Application at ¶¶ 7-12). As is set forth in C&D's application and response, their clients represent only a small percentage of C&D's revenues and, even more importantly, C&D does not and will not represent any of them in connection with this case. Further, should any issue involving those entities arise that may require Committee involvement, the Committee would retain conflicts counsel. Thus, at most, in the Pilgrim case, there is only a potential conflict of interest or the appearance of a conflict that is not an actual one at this time (or at the time of retention).

In these circumstances, the Court finds that there is no actual existing or potential conflict of interest that would preclude or prohibit C&D's representation of the Committee in these cases, nor does section 1103(b) in any way prohibit that representation. Thus, the first prong of the *Arkansas* test is satisfied, as the Court would have exercised its discretion in approving C&D's retention if the matter had been presented to it for decision previously.

11

### (b) Whether There Are Extraordinary Circumstances Justifying *Nunc Pro Tunc* Approval

The Court will now analyze whether C&D's retention application satisfies the "extraordinary circumstances" standard so as to warrant retroactive approval. For the reasons that follow, the Court finds that the extraordinary circumstances of this case easily satisfy that standard.

First, the factors relating to whether the "applicant or some other person bore responsibility for applying for approval" and "the length of time [the applicant] delayed in seeking court approval," weigh in favor of *nunc pro tunc* approval. The Committee promptly applied for approval of C&D's retention (through C&D) on October 7, 2016, less than ten days after the Committee was formed on September 28, 2016. The Committee also promptly moved for the retention of C&D in the jointly administered Campanella case, which was granted without objection. As to the "time pressure to begin service," this factor is also satisfied as the Committee was forced to move quickly to protect its rights by, *inter alia*, moving for the joint administration of these cases, identifying assets that were not listed or not properly listed, seeking related discovery, investigating transfers of assets that may need to be (and ultimately were) reversed, objecting formally and informally to the Plan that had been filed by Pilgrim and performing other necessary tasks. These factors weigh strongly in favor of *nunc pro tunc* retention because (a) there was a need to begin providing services immediately; and (b) the Committee promptly applied to retain C&D in any event.

As to other factors, such as the potential prejudice to other parties or the adverse impact on the administration of the estate or the reorganization process, these factors also weigh decidedly in favor of *nunc pro tunc* approval. The Court finds that the Committee's involvement did not in any way adversely or improperly prejudice any other party or the proceedings in these cases. To the contrary, there were and continue to be direct and demonstrable benefits to the estate and the

Committee's constituency from C&D's involvement. As noted above, with the assistance of C&D, the Committee identified the improper transfer of two valuable properties by Campanella for nominal consideration ($1.00): 393 Bloomfield Avenue in Montclair where Pilgrim operates and pays rent, and 381 Bloomfield Avenue in Montclair, which is rented to a restaurant. According to Dr. Campanella, these properties are unencumbered by any mortgages and have a combined value of approximately $2.2 million. Further, these properties were transferred fourteen months *after* the Plaintiffs filed their discrimination claims against these Debtors. (See Committee Response at ¶¶ 13-15, [Dkt. No. 100]).

The Committee also discovered various and numerous significant transfers that were omitted from the Debtors' schedules. (See Committee's Response, ¶ 16, listing twelve separate undisclosed transfers). *Id.* The Committee also highlighted certain potentially material omissions and inconsistencies in the Debtors' schedules and statement of financial affairs, objected to the Debtors' proposed plan of reorganization and ultimately negotiated a settlement with the Debtors that resolved those objections, and will result in the payment in full of all creditors. That settlement also provided for, among other things, the subordination of Mrs. Campanella's claims as to certain properties she jointly owned with Dr. Campanella and significantly improved the treatment of Plaintiffs, who represent all or substantially all the disputed and unpaid debt of the Debtors.[1]

Additional extraordinary circumstances exist that are specific to this case and further justify *nunc pro tunc* retention. First, as noted, the Committee did expeditiously apply to retain C&D (after it checked conflicts and determined how to address conflicts issues). *See In re ICG Communications, Inc.,* 2001 WL 1820319 *4-5 (Bankr. D. Del. Aug. 2, 2001) (after stating that

---

[1] In fact, Pilgrim recently filed amended schedules showing no unpaid trade debt.

13

extraordinary circumstances standard "requires bankruptcy courts to consider the circumstances of each case in light of equitable factors," the court also noted that it is not uncommon for a creditors committee and its counsel to take some time to agree upon retention terms, with a 30 to 60 day delay between engagement and filing of the retention application not unusual).

Next, the hearing on the Committee's retention application was adjourned for two weeks from November 15, 2016 to November 29, 2016 and then rendered moot in the interim by the United States Trustee's determination to disband the Committee on November 16, 2016. Almost immediately thereafter, the Plaintiffs moved to reinstate the Committee or appoint an Official Committee of Employment Discrimination Plaintiffs (the "Reinstatement Motion"). The Reinstatement Motion was adjourned while the parties engaged in court-ordered mediation and related settlement discussions that resulted in the now-consensual plan being proposed to the Court. The Court finds that this unusual and *sui generis* set of circumstances is extraordinary and justifies *nunc pro tunc* retention of the Committee for the period from September 28, 2016 to November 16, 2016 in the Pilgrim case.[2]

### D. The Special Objections to Services Rendered and Expenses Incurred by C&D

The Debtors also object to much of the compensation and expenses sought by C&D as necessary, duplicative and not benefitting the estate. More specifically, the Debtors allege that C&D's time was improperly spent by:

- exerting pressure on Dr. Campanella by seeking discovery from him and his family to gain advantage for the judgment creditors;

- defending itself against disbandment;

---

[2] In this regard, the Court also notes that there is a strong likelihood that even if Plaintiffs were ultimately determined to be technically ineligible to serve on the unsecured creditors committee, the Court would have established a Committee of Employment Discrimination Plaintiffs so that Plaintiffs' interests could be adequately represented in this case under 11 U.S.C. § 1102(a)(2). Further, for the reasons already stated, and those that follow, there is also a strong likelihood that C&D would, in the alternative, have been awarded compensation and expenses by this Court for the substantial contributions it made to these cases under 11 U.S.C. § 503(b)(4).

14

- protecting itself against conflicts;

- any time sheet researching fraudulent transfers;

- the Committee had no diversity, served only its own agenda and did not provide adequate representation.

Except with respect to fees incurred in researching and resolving its own conflicts issues, this Court disagrees with the Debtors arguments and finds that the Committee did exactly what it was supposed to do in asserting the interests of its constituents, to their direct and demonstrable benefit.

As to the allegedly harassing nature of the discovery served on Dr. Campanella and his family members, the Court observes that Dr. Campanella made various transfers to his wife, daughter and related entities for little or no consideration after Plaintiffs commenced their discrimination suit against Debtors. The Court further notes that Mrs. Campanella was an "office manager" paid $200,000 a year, while Dr. Campanella himself received little or no direct compensation (besides net profits), and that Dr. Campanella's daughter is an attorney who was paid significant sums each year by Debtors. The Committee would have been properly subject to criticism for not seeking discovery from these individuals, rather than for doing so. Thus, this objection is overruled.

As to the Debtors "agreement" to return certain allegedly fraudulent transfers, they did so only after the transfers were identified and challenged by the Committee. Again, the Committee was doing precisely what it was supposed to do in identifying improper transfers and seeking their return. That at least some of the identified transfers were so blatantly improper as to warrant the voluntary return of the two Montclair properties actually provided substantial benefit to the estate in at least two significant ways. First, the valuable properties (worth approximately $2.2 million) were, in fact, returned to the estate. Second, the estate did not incur the additional expenses that would have inevitably been incurred by both sides in litigating the issues.

15

Accordingly, the Debtors' objections relating to time spent identifying the improper transfers, researching fraudulent conveyance law and recovering the properties are overruled.

The Debtors' objection that the Committee had no diversity, served only itself and did not provide adequate compensation are also overruled. The Committee is required to serve its own interests, so that is not a valid objection. *See* 7 COLLIERS ON BANKRUPTCY, ¶ 1103.05 [2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (a creditors committee owes a fiduciary duty to the class it represents as a whole, rather than individual members; its duties are limited to the class it represents and do not extend to the debtor, other groups of creditors or the estate).

The "no diversity" objection is also overruled for various reasons. First, the Debtors candidly and repeatedly admitted that the only reason this case was filed was because of the Plaintiffs' Judgment. Similarly, Debtors represented to this Court that the classes of other creditors were *de minimis* or nonexistent as virtually all (or all) other creditors were being paid in the ordinary course. Pilgrim's recently amended schedules confirm this fact. This Court also finds that C&D provided adequate and necessary representation to the Committee. The Committee and its members were under attack by the Debtors from the inception of the case and were faced with a proposed plan that would have paid their claims over a period of many years (first, $16,000 annually, then $32,000 per year after the appeal is decided) without security and while the appeal proceeded through the Courts. In the meantime, the Debtors and their principals would have kept all their properties, income and equity. The Debtors also successfully (at least temporarily) sought to disband the Committee by treating the Plaintiffs as secured. However, this Court finds that whether secured or unsecured, these Plaintiffs needed vigorous representation to protect their substantial interests in this case and that without that type of representation, Plaintiffs' claims would have received far worse treatment than they will now receive under the consensual plan.

As to services rendered in protecting the Committee from disbandment and defending C&D's retention, the Court finds for the same reasons that these services were necessary and beneficial to the estate. The Plaintiffs and the Committee were the focus of this case from the beginning and the reason these otherwise very solvent Debtors filed for bankruptcy protection. As the result of this filing, the Debtors obtained the substantial benefits afforded by the Bankruptcy Code, including what amounted to an unbonded stay of the Plaintiff's Judgment. But to balance those benefits, the Bankruptcy Code provides for (among other things) the formation of Committees to protect the rights of certain constituencies. These Committees may retain counsel and other professionals and are entitled to be paid from the estate.

The Committee properly and understandably sought to defend itself against disbandment and to retain its selected counsel. Without the Committee and C&D's zealous representation, this Court has no doubt that the improperly transferred properties would not have been returned and the Plaintiffs would have received far worse treatment than they are getting now.

In short, the Committee was entitled to representation in this case, and for the reasons noted in this Opinion, the estate is properly being charged for that representation. Thus, except as noted in the following section, the Debtors' objections to C&D's fee application are overruled.

### E. Time Spent in Resolving Conflicts

The area that the Court does find C&D's fees to be noncompensable is for services that relate to its own internal conflicts checks, resolution of conflicts issues and preparation of related pleadings. *See In Re Sterling Chemicals Holdings, Inc.*, 293 B.R. 701 (Bankr. S.D. Tex. 2003). In *Sterling*, the United States Trustee objected to the allowance of compensation for time spent by various estate professionals in conducting conflicts checks and reviewing local disciplinary rules to demonstrate their disinterestedness under 11 U.S.C. § 327(a). The *Sterling* court disallowed those fees (much of which related to the merger of two affected firms), because the firms were

17

doing what was ethically required to accept an engagement and which did not result in any benefit to the estate. *Id*. at 703-04. The court allowed, however, fees related to making the disclosures required by the Bankruptcy Code and Rules.

This Court agrees with the reasoning by *Sterling* and will disallow fees related to C&D's clearing of conflicts checks to allow this representation to go forward as not providing any benefit to the estate. Based on the Court's review, those services are as follows:

| **Date** | **Time Billed** | **Individual Initials** | **Disallowed Fee Amount** | **Services Rendered** |
|---|---|---|---|---|
| 10/1/16 | 1.50 | DE | $750.00 | Pleadings relating to conflicts disclosures |
| 10/1/16 | .60 | DE | 300.00 | Conflicts checks |
| 10/4/16 | .70 | DE | 350.00 | Review prior representation of Debtor |
| 10/5/16 | 1.80 | DE | 900.00 | Review RPC's re prior representation, etc. |
| 10/7/16 | .50 | DE | 250.00 | Continued conflicts review |
| TOTALS: | 5.10 | | $2,550.00 | |

Similarly overruled are Debtors' general objections that time spent on certain services was unnecessary, excessive or duplicative. The Court has carefully reviewed the challenged entries and does not find them unnecessary, duplicative or excessive in the circumstances, except for the limited entries noted below:

| **Date** | **Time Billed** | **Individual Initials** | **Disallowed Fee Amount** | **Services Rendered** |
|---|---|---|---|---|
| 10/7/16 | 1.00 | WP | $150.00 | Time spent by paralegal drafting notice of appearance. Attorney also separately charged for same service |
| 10/11/16 | 2.00 | WP | $150.00 (1 hour or 1/2 allowed) | Drafting Certification of Service; cover letter and electronic filing |
| 11/8/16 | 1.50 | WP | 75.00 (.75 or 1/2 allowed) | Draft Certification of Service and cover letter; electronic filing |
| | | Subtotal: | 375.00 | |
| | | TOTAL: | $2,925.00 | |

.

For all the foregoing reasons, C&D's retention by the Committee is approved *nunc pro*

18

*tunc* to September 28, 2016 and its application for fees and expenses is allowed as follows:

| Applicant | Fees | Expenses |
|---|---|---|
| Cullen and Dykman | $53,429.00 (sought) | $489.53 (sought) |
|  | 2,925.00 (disallowed) | 236.20 (disallowed) |
| Allowed: | $50,504.00 | $253.33 |

An implementing Order accompanies this Opinion.

Dated: July 26, 2017

/s/Vincent F. Papalia
VINCENT F. PAPALIA
United States Bankruptcy Judge

19

United States Bankruptcy Court
District of New Jersey

In re:  
Pilgrim Medical Center, Inc.  
    Debtor

Case No. 16-15414-VFP  
Chapter 11

## CERTIFICATE OF NOTICE

District/off: 0312-2      User: admin      Page 1 of 1      Date Rcvd: Jul 27, 2017  
                       Form ID: pdf903      Total Noticed: 4

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 29, 2017.
```
db          +Pilgrim Medical Center, Inc.,    393 Bloomfiled Ave.,    Montclair, NJ 07042-3741
aty         +Gina Campanella,    44 Engle Street, 2nd Floor,    Englewood, NJ 07631-2905
aty         +Piekarsky & Associates, LLC,    191 Godwin Avenue - Suite 9,    Wyckoff, NJ 07481-2052
aty         +Scura, Mealey, Wigfield & Heyer,    1599 Hamburg Turnpike,    Wayne, NJ 07470-4093
```

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.  
NONE.      TOTAL: 0

        ***** BYPASSED RECIPIENTS *****  
NONE.      TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.  
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 29, 2017                      Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 27, 2017 at the address(es) listed below:
```
              A. Crew   Schielke     on behalf of Debtor     Pilgrim Medical Center, Inc. crew@crewschielke.com
              Connie J Delisser     on behalf of Creditor    BANK OF AMERICA, N.A. cdelisser@mlg-defaultlaw.com,
               BKECF@mlg-defaultlaw.com
              David   Edelberg     on behalf of Creditor Committee    Official Comittee of Unsecured Creditors
               dedelberg@cullenanddykman.com
              David   Edelberg     on behalf of Creditor Tania  Mena dedelberg@cullenanddykman.com
              David   Edelberg     on behalf of Creditor Jacqueline  Jalil dedelberg@cullenanddykman.com
              David   Edelberg     on behalf of Creditor Luisa  Rojas dedelberg@cullenanddykman.com
              David   Edelberg     on behalf of Creditor Committee    Official Committee Of Unsecured Creditors
               dedelberg@cullenanddykman.com
              David L. Stevens     on behalf of Creditor Nicholas V Campanella dstevens@scuramealey.com,
               cbalala@scuramealey.com;ecfbkfilings@scuramealey.com;dsklar@scuramealey.com;ascolavino@scuramealey.com
              David L. Stevens     on behalf of Debtor    Pilgrim Medical Center, Inc. dstevens@scuramealey.com,
               cbalala@scuramealey.com;ecfbkfilings@scuramealey.com;dsklar@scuramealey.com;ascolavino@scuramealey.com
              David L. Stevens     on behalf of Interested Party    Pilgrim Medical Center, Inc.
               dstevens@scuramealey.com,
               cbalala@scuramealey.com;ecfbkfilings@scuramealey.com;dsklar@scuramealey.com;ascolavino@scuramealey.com
              Jerome M Douglas     on behalf of Creditor Nicholas V Campanella jdouglasatty@gmail.com,
               mmalta@debtorcounsel.com
              Jerome M Douglas     on behalf of Debtor Nicholas V Campanella jdouglasatty@gmail.com,
               mmalta@debtorcounsel.com
              Jerome M Douglas     on behalf of Debtor    Pilgrim Medical Center, Inc. jdouglasatty@gmail.com,
               mmalta@debtorcounsel.com
              Jerome M Douglas     on behalf of Interested Party Nicholas K Campanella jdouglasatty@gmail.com,
               mmalta@debtorcounsel.com
              John F. Murano    on behalf of Creditor Jacqueline  Jalil john@muranoroth.com,
               vicky@muranoroth.com
              John F. Murano    on behalf of Creditor Tania  Mena john@muranoroth.com,  vicky@muranoroth.com
              John F. Murano    on behalf of Creditor Luisa  Rojas john@muranoroth.com,  vicky@muranoroth.com
              John J. Scura, III    on behalf of Debtor    Pilgrim Medical Center, Inc. jscura@scuramealey.com,
               cbalala@scuramealey.com;ecfbkfilings@scuramealey.com;ascolavino@scuramealey.com;dsklar@scuramealey.com
              Michael Frederick Dingerdissen    on behalf of Creditor    BANK OF AMERICA, N.A. nj.bkecf@fedphe.com
              U.S. Trustee.    USTPRegion03.NE.ECF@usdoj.gov
```
                                                                             TOTAL: 20